Filed 9/15/22  P. v. Rodriguez CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B316391 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. BA477061 |
| v. | |
| GUSTAVO ALEXANDER RODRIGUEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  David R. Fields, Judge.  Affirmed.

Carlos Ramirez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

A jury convicted Gustavo Alexander Rodriguez of several offenses, including kidnapping and making criminal threats against a four-year-old child. The court sentenced Rodriguez to an aggregate term of 13 years in prison, which included the high terms on two counts. On appeal, Rodriguez contends his case must be remanded for resentencing in accordance with Senate Bill No. 567 (2021–2022 Reg. Sess.) (SB 567) and Assembly Bill No. 124 (2021–2022 Reg. Sess.) (AB 124). We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

Rodriguez dated Justin R.'s mother, Kenia R. Rodriguez was jealous of Justin's father, Francisco Ortuna, whom Kenia had previously dated. Rodriguez and Kenia ended their relationship in January 2019.

Sometime after breaking up, Kenia agreed to give Rodriguez a ride. Kenia planned to drop Rodriguez off after she made a stop to pick up a payment for a clothing sale. When Kenia got out of the car to go to the door of the residence, Rodriguez moved into the driver's seat and drove away in the car with Justin, who was four years old at the time.

Rodriguez told Kenia he would "give [her] the kid back" if she "turn[ed] [Ortuna] in to [Rodriguez]." He told her, "We're going to make an exchange." Rodriguez instructed Kenia to "call him once [Ortuna] was with [her]." He said "he already [had] a toy with two sweets, one for Justin's father and one

---

[1]     We take judicial notice of the record in Rodriguez's prior appeal in the same case, *People v. Rodriguez* (July 16, 2021, B304602) [nonpub. opn.]. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

for [her]." Rodriguez "later" told Kenia that the "toy" was "a weapon" and the "sweets" were "[t]wo bullets."

Kenia "was calling [Rodriguez] constantly." Rodriguez told her if he "saw any police movement" he was "going to send [her] the kid's first little finger so that [she] could see that he was not playing and that he would send [her] the other little finger later." Kenia "begged" Rodriguez "for seven hours." At some point, Rodriguez picked up Kenia, telling her "he was going to give me my boy." Justin apparently was at a Burger King with Rodriguez's older daughter.

Kenia arrived at the Burger King and found Justin with Rodriguez's daughter. Justin started to cry and said, " 'Mom, don't let me go because [Rodriguez] said to me that he was going to cut this little finger and that he was going to send it to you. And then that he was going to cut this one. And then this one. And that if you didn't bring my dad, he was going to cut my head off and he was going to send it to you in a wooden box. And I am very scared. I don't want anything to happen to my daddy.' "

The People charged Rodriguez with a number of crimes, including kidnapping Justin (count 1) and criminal threats against Justin (count 2). The case went to trial in December 2019. The jury convicted Rodriguez on all but one charged count.

The court sentenced Rodriguez to 13 years and 8 months in prison, plus 180 days in jail. The sentence included the high term of 11 years on count 1 (kidnapping Justin), and a concurrent high term of three years on count 2 (criminal threats against Justin), which the court stayed under Penal Code section 654.[2] The court explained the basis for imposing the high terms as

_____

[2]     Undesignated statutory references are to the Penal Code.

3

follows: "[T]his case involved both a threat of great bodily harm and a high degree of cruelty, viciousness, and callousness, and I don't say these words lightly. This was a vicious act, just cruel and inhumane . . . . [¶] [T]he fact that he would threaten to cut the child's fingers off one at a time and send them to the mother if he didn't get the father, and then he threatened to cut his head off and send it to the mother in a box. I mean, how much more vicious can you get? That's horrible, despicable. It's unforgivable, and I think that that's—that's just powerful, overwhelming callousness and disregard for human decency." The court also noted the victim was "particularly vulnerable."

Rodriguez appealed, and we overturned the conviction on one of the counts. On remand, the trial court dismissed that count and resentenced Rodriguez to an aggregate term of 13 years. The court again imposed the high terms on counts 1 and 2 for the "reasons stated" at the original sentencing.[3]

Rodriguez timely appealed.

## DISCUSSION

### 1. *Remand is not required for resentencing under SB 567*

At the time the trial court sentenced Rodriguez, section 1170 provided that "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court." (Former § 1170, subd. (b).) Under this provision, the trial court was free to impose an upper term sentence based on any aggravating circumstances it deemed significant, so long as they were reasonably related to the decision being made. (*People v. Moberly* (2009) 176 Cal.App.4th 1191, 1196.)

---

[3] The court stayed the sentence on count 2 under section 654.

4

"An aggravating circumstance is a fact that makes the offense 'distinctively worse than the ordinary.' " (*People v. Black* (2007) 41 Cal.4th 799, 817.) The California Rules of Court provide a non-exhaustive list of aggravating circumstances, including that the crime involved a threat of great bodily harm, the victim was particularly vulnerable, and the crime involved acts disclosing a high degree of cruelty, viciousness, or callousness. (Cal. Rules of Court, rule 4.421.)

While Rodriguez's appeal was pending, SB 567 went into effect. It restricts a trial court's discretion to impose an upper term sentence. Effective January 1, 2022, "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).)

The parties agree, as do we, that because Rodriguez's case was not yet final when SB 567 went into effect, he is entitled to the retroactive benefit of the ameliorative legislation. (See *In re Estrada* (1965) 63 Cal.2d 740, 744–745; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039; *People v. Garcia* (2022) 76 Cal.App.5th 887, 902.) The parties disagree, however, as to the proper disposition. Rodriguez insists that, because the trial court relied on aggravating circumstances not stipulated to or found true by the jury when imposing the upper terms on counts 1 and 2, we must remand the case for resentencing. The Attorney General insists remand is not necessary because the trial court's failure to apply the new law is harmless.

"[W]here a sentencing factor must be found true by a jury beyond a reasonable doubt and the court fails to submit that factor to the jury, the error in the court's reliance on that fact may be subject to harmless error review as to whether the lack of a finding by the jury was prejudicial . . . . 'Such an error does not require reversal if the reviewing court determines it was harmless beyond a reasonable doubt, applying the test set forth in *Chapman v. California* (1967) 386 U.S. 18 . . . . The failure to submit a sentencing factor to a jury may be found harmless if the evidence supporting that factor is overwhelming and uncontested, and there is no "evidence that could rationally lead to a contrary finding." ' " (*People v. Lopez* (2022) 78 Cal.App.5th 459, 465 (*Lopez*).)

Here, the trial court cited three aggravating circumstances in support of its decision to impose an upper term sentence on counts 1 and 2: (1) Justin was particularly vulnerable, (2) the crime involved a threat of great bodily harm, and (3) the crime involved a high degree of cruelty, viciousness, and callousness. As to the first circumstance, determining whether a victim was particularly vulnerable often requires an imprecise quantitative or comparative evaluation of the facts. (*People v. Sandoval* (2007) 41 Cal.4th 825, 840.) In this case, however, it is beyond dispute that Justin's young age—four years old—made him particularly vulnerable. (See *id.* at p. 842 ["clear-cut" instances of victim vulnerability include when the victim was elderly, very young, or disabled].) Accordingly, we can confidently conclude the jury would have found this aggravating circumstance true.

The same is true of the second and third aggravating circumstances. The evidence shows Rodriguez threatened to cut off Justin's fingers one by one and then send them to his

6

mother. Rodriguez also threatened that, if Kenia did not deliver Justin's father, Rodriguez would cut off Justin's head and send it to his mother in a wooden box. In doing so, Rodriguez essentially conveyed to the young child that he could avoid physical harm only if his father suffered harm instead. Based on this evidence, which the jury plainly believed in convicting Rodriguez, any reasonable person would conclude the crimes involved a threat of great bodily harm as well as a high degree of cruelty, viciousness, and callousness.

Because it is beyond a reasonable doubt that the jury would have found true all three aggravating circumstances on which the trial court relied, remand for resentencing is not necessary. (*Lopez, supra*, 78 Cal.App.5th at p. 465.)

## 2. *Remand is not required for resentencing under AB 124*

Effective January 1, 2022, AB 124 amended section 1170 to provide: "[U]nless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." (§ 1170, subd. (b)(6).)

As we understand his argument, Rodriguez contends his case must be remanded for resentencing under AB 124 because it is likely that trauma was a contributing factor in the crimes. We agree with Rodriguez that AB 124 applies to his case. (See *People v. Banner* (2022) 77 Cal.App.5th 226, 240 [AB 124 applies

7

retroactively to all nonfinal cases on appeal].)  Remand, however, is not required.  The record contains no evidence that Rodriguez suffered any trauma, let alone evidence showing trauma was a contributing factor in the commission of the offenses.  Nor do we agree with Rodriguez's cursory suggestion that it is likely he suffered trauma in light of his unknown citizenship status and indigency.  Rodriguez, moreover, had an incentive to develop the record on this issue because trauma was a recognized mitigating circumstance when the court sentenced him.  (See Cal. Rules of Court, rule 4.423(c) [a trial court may consider any circumstances in mitigation that reasonably relate to the defendant or the crime]; *In re Lucas* (2004) 33 Cal.4th 682, 729 [the defendant's history of childhood trauma provided "powerful mitigation evidence"].)  His failure to do so demonstrates that remand would be an idle act.  (See *People v. McDaniels* (2018) 22 Cal.App.5th 420, 425 [remand is not required if it would be an idle act]; *cf. People v. Frahs* (2020) 9 Cal.5th 618, 640 [remand for a mental health diversion eligibility hearing was warranted where the record affirmatively disclosed that the defendant appeared to meet an eligibility requirement for diversion].)

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

LAVIN, Acting P. J.

ADAMS, J.[*]

---

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.